## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Criminal Action No. 2015-0013** |
| DAMIAN LANG, SR., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**Attorneys:**
**Rhonda Williams-Henry, Esq.,**
St. Croix, U.S.V.I.
 *For the Government*

**Yvette D. Ross-Edwards, Esq.,**
St. Croix, U.S.V.I.
 *For Defendant*

### MEMORANDUM OPINION

**Finch, Senior District Judge**

THIS MATTER comes before the Court on Defendant's "Motion to Exclude Expert Testimony of Government's Noticed Firearm/Tool Mark Examiner M.L. Cooper," wherein Defendant challenges the Government's firearms and toolmark expert—M.L. Cooper—and seeks to exclude his testimony and expert opinion, either orally or in writing. (Dkt. No. 58). The Government opposes the Motion. (Dkt. No. 65). For the reasons discussed below the Court will deny Defendant's Motion.

### I.  BACKGROUND

#### A. Factual Background

On October 24, 2014, members of the Virgin Islands Police Department ("VIPD") executed a search warrant at an apartment located in Frederiksted, Virgin Islands, where they recovered five buckshot shotgun shells. (*See* Dkt. No. 1-1 at 2). Defendant, an occupant of the

apartment, and two other occupants—an adult woman and an infant child—were present during the search. (*Id*.). On April 28, 2015, Defendant, a convicted felon,[1] was charged in a two-count Indictment with: (1) felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1); and (2) unauthorized possession of ammunition, in violation of 14 V.I.C. § 2256(a). (Dkt. No. 18).[2]

### B. Procedural History

#### 1. Notice of Expert Witness

On January 11, 2016, the Government filed a "Notice of Expert Witness," wherein it states that "it intends to call [at trial] Firearms/Tool Mark Examiner M.L. Cooper, of the Virgin Islands Police Department (VIPD) to testify about the recovery of trace evidence, including latent prints and DNA, from ammunition." (Dkt. No. 57 at 1). The Government represents that

> Mr. Cooper is expected to testify about what latent prints and DNA are and the factors that influence whether a latent print or DNA are left on a surface. He will also testify as to the difficulty in obtaining latent prints and DNA from ammunition and the low rate at which such types of trace evidence are recovered.

(*Id*.). The Government further represents that

> Mr. Cooper is expected to testify that it would be unlikely to recover latent prints from the surface of the specific ammunition in this case (five shotgun shells). He is also expected to testify that it would be unlikely to recover a complete DNA profile or the Defendant's DNA profile from the specific ammunition in this case.

(*Id*.).

According to the Government, Mr. Cooper will testify based on his review of: (1) a comprehensive narrative report prepared by Officer Don Peter on October 24, 2014; (2) photographs of the ammunition "as it was recovered" in Defendant's apartment; and (3)

---

[1] In an Affidavit prepared by Detective Moses President of the VIPD in support of the arrest of Defendant, Detective President stated that, according to the National Crime Information Database ("NCIC"), Defendant was convicted of Grand Theft Third Degree, a felony, in Tampa, Florida in 1999, and Felony Armed Robbery in DeKalb County, Georgia in 2000. (Dkt. No. 1-1 at 2).

[2] Defendant was initially charged by Complaint on March 20, 2015.  (Dkt. No. 1).

photographs of the ammunition provided by Special Agent Steven T. Strickland of the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms, and Explosives. (*Id*. at 1-2). The Government contends that "Mr. Cooper is qualified to express an opinion based upon review of the above-referenced materials and his knowledge, skill, experience, training, and education described in his *curriculum vitae*." (*Id*. at 2).

### 2.   Motion to Exclude Expert Testimony of M.L. Cooper

Defendant moves to exclude the testimony of Mr. Cooper, arguing that his testimony—as represented by the Government—fails to meet the standards for admissibility under Rule 702 of the Federal Rules of Evidence. (*See* Dkt. No. 58 at 3). Specifically, Defendant argues that "[Mr. Cooper] does not explain how he came to his conclusions nor does he support his conclusions with [] citation to any accepted methodology." (*Id*.). Defendant contends that "[i]t appears that [Mr. Cooper] will simply regurgitate the work of someone else without any independent analysis." (*Id*. at 2-3).

### 3.   Response by the Government

The Government contends that its "expert witness notice adequately summarizes Mr. Cooper's expected testimony along with the basis of those opinions." (Dkt. No. 65 at 2). The Government explains that "Mr. Cooper reviewed the VIPD narrative report describing the recovery of the ammunition along with photographs of the ammunition showing where it was recovered and how it was stored." (*Id*.). The Government states that Mr. Cooper also examined "photographs showing the surface of the ammunition casing." (*Id*.). According to the Government, "Mr. Cooper's opinions are based upon his review of those items and his extensive experience and training detailed in his *curriculum vitae*." (*Id*.).

## II.   DISCUSSION

### A.  Applicable Legal Principles

The introduction of expert opinion testimony is governed by Rule 702 of the Federal Rules of Evidence. Rule 702 provides that a witness qualified as an expert by knowledge, skill, experience, training or education may provide opinion testimony if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702.[3] A trial judge "acts as a 'gatekeeper,' preventing opinion testimony that does not meet these requirements from reaching the jury." *Mercedes-Benz USA, Inc. v. Coast Auto. Group, Ltd.*, 362 F. App'x 332, 334 (3d Cir. 2010) (citing *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592-95 (1993)).

The Third Circuit has stated that "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge [, i.e., reliability]; and (3) the expert's testimony must assist the trier of fact [, i.e., fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (internal quotations omitted)); *see also Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) ("Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and

---

[3] The full text of Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

4

fit."). "The party offering the expert must prove each of these requirements by a preponderance of the evidence." *Mahmood v. Narciso*, 549 F. App'x 99, 102 (3d Cir. 2013) (citing *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999)).

To qualify as an expert under Rule 702, "the witness [must] possess specialized expertise." *Schneider*, 320 F.3d at 404. The Third Circuit has "emphasized that the 'specialized expertise' requirement is a liberal one: 'a broad range of knowledge, skills, and training [may] qualify an expert as such.'" *De La Cruz v. V.I. Water & Power Auth.*, 597 F. App'x 83, 91 (3d Cir. 2014) (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) (alteration in *De La Cruz*)). Thus, an expert may be sufficiently qualified to testify even if "the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Pineda*, 520 F.3d at 244 (quoting *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) (internal quotation marks omitted)).

To establish reliability, the expert's opinion "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *In re Paoli*, 35 F.3d at 742 (quoting *Daubert*, 509 U.S. at 590). In assessing whether a particular methodology is reliable, the Third Circuit has held that courts should consider the following, non-exhaustive factors:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Pineda*, 520 F.3d at 247-48 (citations omitted). However, "each factor need not be applied in every case." *Elcock v. Kmart Corp.*, 233 F.3d 734, 746 (3d Cir. 2000).

To determine fit, expert testimony "must be relevant for the purposes of the case and must assist the trier of fact." *Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 321 (3d Cir. 2003) (quoting *Schneider*, 320 F.3d at 405) (internal quotation marks omitted)). In other words, it must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Schiff*, 602 F.3d at 173 (quoting *Daubert*, 509 U.S. at 591). The Third Circuit has explained that this requirement is met "when there is a clear 'fit' connecting [an] issue in the case with the expert's opinion[.]" *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009) (citing *Lauria v. AMTRAK*, 145 F.3d 593, 600 (3d Cir. 1998)).

### B. Analysis

Defendant moves to preclude the expert testimony of Maurice L. Cooper ("Mr. Cooper") on the grounds that, *inter alia*, the Government has failed to qualify Mr. Cooper as an expert on the recovery of trace evidence from the surfaces of firearms and ammunition.[4] Specifically, Defendant argues that the Government has not shown that Mr. Cooper has the requisite specialized knowledge, skills, and training to testify as an expert on the recovery of trace evidence. The Government asserts otherwise, contending that Mr. Cooper's knowledge and experience qualify him to offer an expert opinion on the recovery of trace evidence in this case.

In *Elcock v. Kmart Corporation*, 233 F.3d 734 (3d Cir. 2000), the Third Circuit articulated the standard for qualifying an expert:

> Rule 702 requires the witness to have "specialized knowledge" regarding the area of testimony. The basis of this specialized knowledge "can be practical experience as well as academic training and credentials." [The Third Circuit has] interpreted the specialized knowledge requirement liberally, and ha[s] stated that this policy of liberal admissibility of expert testimony "extends to the substantive as well as the

---

[4] Defendant also argues that the Government has failed to establish that Mr. Cooper is an expert firearms/toolmark examiner. However, the Government's "Notice of Expert Witness," states that the Government "intends to call [at trial] Firearms/Tool Mark Examiner M.L. Cooper, of the Virgin Islands Police Department (VIPD) to testify about the recovery of trace evidence, including latent prints and DNA, from ammunition." (Dkt. No. 57 at 1). Therefore, Mr. Cooper's qualification as a firearms/toolmark examiner is not at issue.

formal qualification of experts." However, "at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman. . . ."

*Id.* at 741 (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)); *see also United States v. Lee*, 339 F. App'x 153, 158 (3d Cir. 2009).

Here, Mr. Cooper, a Forensic Science Consultant with the Virgin Islands Police Department ("VIPD") for the last eight years, testified at a *Daubert* hearing that prior to working for the VIPD, he spent twenty-five years working for the Indiana State Police Laboratory as a criminalist, crime scene technician, and supervisor. He explained that as a criminalist, he was required to be qualified as a firearms examiner and latent print examiner.[5] He explained further that his duties and responsibilities as a crime scene technician included the development and identification of latent fingerprints and firearms identification. He stated that as a supervisor, he was in charge of the firearms unit and the fingerprint unit, and that he exercised oversight and quality control over both units.

Mr. Cooper also testified that after he retired from the Indiana State Police Laboratory, he spent seven years in the Firearms and Toolmarks Unit of the Palm Beach County Sherriff's Office in West Palm Beach, Florida, where he assisted with the recovery of trace evidence from firearms and ammunition components.[6] He testified further that, in 2007, he accepted a one-year contract with the Forensic Science Center in Trinidad and Tobago, where he assisted in the Firearms Unit, and that in 2008, he joined the VIPD as a consultant. In his position as a consultant with the VIPD, Mr. Cooper stated that he has performed firearms and toolmark-related case work and provides guidance to the Crime Scene Unit regarding the recovery of trace evidence.

_____

[5] Mr. Cooper testified that "a latent print is a print that is invisible to the [naked] eye," but can be "developed by any one of a number of means." Mr. Cooper stated that a latent print "can be fingerprints, elbow prints, [or] tire prints."

[6] Mr. Cooper explained at the *Daubert* hearing that trace evidence is "anything of evidentiary value that can be found on or about a piece of evidence"—i.e., dirt, soil, blood, saliva, or fingerprints.

Prior to joining the Indiana State Police Laboratory, Mr. Cooper testified that he completed an internship as a field technician, and that the internship covered all aspects of crime scene protocol—including, the recovery of trace evidence. Mr. Cooper also testified that he attended the basic and advanced FBI fingerprint schools. According to his *curriculum vitae*, Mr. Cooper has attended numerous training sessions and seminars on firearms and toolmark analysis (*see* Dkt. No. 57-1), many of which Mr. Cooper testified included ancillary topics, such as the recovery of trace evidence from firearms and ammunition.[7] Mr. Cooper is currently a member of the Association of Firearms and Toolmark Examiners—an organization that according to Mr. Cooper deals with the recovery of trace evidence—and maintains contact with the Organization of Scientific Area Committees ("OSAC").[8]

For more than three decades, Mr. Cooper has had extensive practical experience and training in the field of forensic science. Particularly, in the areas of firearms and toolmark identification and recovery of trace evidence. He testified at the *Daubert* hearing that he began working with trace evidence when he was a crime scene technician at the Indiana State Police Laboratory, and that over the course of sixteen years (1982-1998) he attempted to recover latent fingerprints and DNA from the surfaces of firearms and ammunition "well over one hundred times." He also testified that he has been qualified on numerous occasions to testify as an expert on the recovery of trace evidence in local, state, and federal courts in Indiana, Florida, Trinidad and Tobago, Anguilla, the British Virgin Islands, and the United States Virgin Islands. Based on the totality of Mr. Cooper's experiences and training, the Court finds that Mr. Cooper has sufficient

---

[7] On cross-examination, Mr. Cooper explained that the recovery of trace evidence is discussed every year at the seminars he attends because practitioners in the field are "constantly looking for ways to enhance the development and recovery of latent prints on firearms."

[8] OSAC coordinates the "development of standards and guidelines for the forensic science community to improve quality and consistency of work in the forensic science community." ORGANIZATION OF SCIENTIFIC AREA COMMITTEES, http://www.nist.gov/forensics/osac.cfm (last visited Apr. 28, 2016).

knowledge—certainly more than "the average lay person"—to qualify as an expert on the recovery of trace evidence under the liberal standard of Rule 702.

In addition to arguing that Mr. Cooper is not qualified to offer expert testimony on the recovery of trace evidence, Defendant also claims that Mr. Cooper's opinion is not supported by a reliable methodology, as required by *Daubert*. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court explained that a court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id*. at 152. Here, Mr. Cooper testified that he did not perform scientific testing in this case. "In cases not involving scientific testimony, . . . 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony.'" *United States v. Walker*, 657 F.3d 160, 175 (3d Cir. 2011) (quoting *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 329 (3d Cir. 2002)). "In such cases, 'the relevant reliability concerns may focus upon personal knowledge or experience.'" *Id*.

On direct examination, Mr. Cooper testified that he reviewed a Crime Scene Evidence Report prepared by VIPD Officer Don Peter, photographs of the five buckshot shotgun shells recovered from Defendant's apartment, and photographs of the black garbage bag that contained the shells. He also testified that he confirmed his resulting opinion with OSAC. On cross-examination, Mr. Cooper explained that the report he reviewed listed that no fingerprints were recovered from the ammunition and that only a partial DNA profile was returned. Mr. Cooper stated that he did not do an independent analysis of the ammunition or the bag because he was "simply asked if it would surprise [him] if no fingerprints were found or a partial DNA profile were found."

Defendant contends that Mr. Cooper's review of the Crime Scene Evidence Report and photographs in this case is insufficient to constitute a reliable methodology, and that his opinion

is not based on independent verification of the evidence. However, the Third Circuit does "not require an expert to base his or her opinions on independent data collection or field research; rather, the question is 'whether an expert's data is of a type reasonably relied on by experts in the field . . . [and] whether there are good grounds to rely on this data to draw the conclusion reached by the expert.'" *Jaasma v. Shell Oil Co.*, 412 F.3d 501, 514 (3d Cir. 2005) (quoting *In re TMI Litig.*, 193 F.3d at 697) (alterations in *Jaasma*); *see also Prudential Prop. & Cas. Ins. Co. v. Remed Recovery Care*, 136 F. App'x 489, 495 (3d Cir. 2005) ("The Supreme Court has held that 'an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation.'") (quoting *Daubert*, 509 U.S. at 592). In addition, experts are "entitled to rely on information learned during the course of [their] experience in the field from others[.]" *United States v. Lee*, 399 F. App'x 153, 158 (3d Cir. 2009); *see also* FED. R. EVID. 703.

Mr. Cooper's review of the Crime Scene Evidence Report and photographs in this case satisfies the reliability test under *Daubert*. The testimony that Mr. Cooper will offer at trial will be based upon his more than thirty years of experience working in the field of forensic science. Mr. Cooper testified that during his career he attempted to recover latent fingerprints and DNA from the surfaces of firearms and ammunition "well over one hundred times." He also testified that he has attended trainings and seminars that covered a myriad of topics, including the recovery of trace evidence. Thus, Mr. Cooper's testimony will be based on his "personal knowledge or experience," *Kumho Tire*, 526 U.S. at 150, rather than a methodology that satisfies the requirements of *Daubert*. This is entirely appropriate under Rule 702. *See United States v. McNeil*, 2010 U.S. Dist. LEXIS 290, at *8 (M.D. Pa. Jan. 5, 2010) ("To the extent that the expert has knowledge of the frequency of firearms without latent prints, the expert [can] testify to that knowledge.").[9]

---

[9] The fact that Mr. Cooper did not do any scientific testing in this case goes to the weight of his testimony and not to its admissibility.

### III.    CONCLUSION

For the foregoing reasons the Court will deny Defendant's "Motion to Exclude Expert Testimony of Government's Noticed Firearm/Tool Mark Examiner M.L. Cooper." (Dkt. No. 58).

An Order to this effect was previously issued. (Dkt. No. 95).

Date:    April 28, 2016

_____/s/_____
RAYMOND L. FINCH
Senior District Judge